Good morning, your honors. My name is Edward Hunt. I represented Ronald Dobek in the trial court. As the court is now aware, Mr. Dobek was charged in a three-count indictment on November 26, 2013. One count charged him with conspiracy to export United States munitions without a license contrary to 22 U.S.C. 2778 B.2 and C. and 22 C.F.R. Sections 121.1, 123.1, 127.1, and 18 U.S.C. 371. He was also charged in another count with attempting to export and export munitions without obtaining a Department of State license for such expert. This was said to have occurred on December 6, 2008. By way of notation, the conspiracy was said to have existed between July 2007 and continuing until in and around January 2009. Now, I submit to the court that this type of arcane law demands the utmost type of specific intent proof, and it instruction that informs the jury that the defendant acted willfully, and willfulness in this context involves knowing and understanding that you cannot violate, for lack of a better phrase, an embargo, and that, the second part, that you must have a license before you export an item. Let's first of all discuss the sufficiency of evidence a little. Now, you don't like the instruction. That's understandable. Did you propose your own instruction? Yes, I did, Your Honor. Do we have that? Your Honor, it's part of the record below. Yes, it's included, and I believe in at least one of the instructions, I proposed several instructions on the willfulness issue. I believe I required that the willfulness definition define not only that the defendant be aware that he is aware of, let's say, an embargo, that he cannot do something, but he also has to be aware that he can't export something. I'm sorry, may I just take that back, just rephrase it? He has to be aware that he cannot export an item because it's on the munitions list, one, and he has to also be aware, there has to be knowledge, that he has to have a license, apply for a license, from the Department of State, before he does so. And he has to be conversant in the law? I think so, Judge. That would mean only a lawyer could commit the crime you're talking about, but go ahead. No, Judge. And only a lawyer who worked in that particular field. No, I wouldn't go that far, Judge, but you do raise an interesting point. No, I didn't raise an interesting point, you did. I'm just responding to it. All right. He has to know that what he's doing is not legal. The specifics of what makes it illegal are not necessarily part of the proof. He doesn't have to know the statute involved. He doesn't have to know the specifics. He doesn't have to know the rules and regulations. We have areas where there's an absolute, when you get into munitions, it's his problem to make sure he's following the law. Your Honor, with all due respect, I see trends. With all due respect means you think I'm full of baloney, but go ahead. No, no, I have the highest respect for the court. There are cases like Swarovski and cases like the Adams case. Did you find a case that supported your instruction by the way, or did you handle that one all by yourself? Well, I took it generally from Adams, from Polongin, from Swarovski. Do make sure, did any of these things use the instruction that you offered, Crawford? Did any of what things, Your Honor? Any of the cases you cited have used as its predicate for the instruction given to the jury what you said. Well, no, because there were sufficiency of evidence cases and what they focused on, Judge. The answer is no. Now I ask the second question. Was there a single case that you found that used the instruction that you gave, or is this a unique situation? Is this the first time it's ever came up? Well, I think... You've got to stay behind the court. Oh, I'm sorry, Judge. I was just musing. I think that it's not a unique situation because this court did, in a general sense, address it in Polongin. In a general sense. And this court, in a general sense, addressed it in Beck. But here's the distinction between Polongin and Beck as I read it. Beck talked about a general knowledge, as I read it, that you just know that you had a legal duty and you violated it. I read Polongin as taking us somewhere else. Polongin mentions the requirement to have a license, not just that something was on the list. You have to have a license. That's what makes it a criminal act. If we're going to hold somebody responsible, we've got to really be very clear... Says who? Pardon me? Says who? Says who? When you say, if you do something wrong, you know it's wrong, then you're committing a crime. Well, Judge... He knew he was exporting this stuff to Venezuela in violation of the embargo. Now, you keep talking about the license, but he knew he was doing that. Judge, I don't think... We permit the exportation of munitions like the embargo. We also permit, we import 400 tons of heroin every year, legally. But that doesn't mean that you can follow that and just say that, well, I have to have specific knowledge of the statute involved or that I have to have a license for it. You're doing it, it's illegal. But I don't want to argue with you. Further, I'm eating into your time. You go ahead and say what you want. No, no, that's fine, Judge. Thank you. Judge Posner, I just wanted to clarify something. The government did not prove, in my mind, that he knew he had a legal duty and that the legal duty was he couldn't export items on the munitions list. And secondly, the government didn't prove that he knew he had to get a license. Now, Judge... He knew about the embargo. He knew he was sending stuff to Venezuela. His correspondence that the government quotes shows his knowledge that he's in trouble. He wants to conceal his relationship with Venezuela. He knows these are military parts that he's shipping there. Can I just respond to that, Judge? Of course. There's a distinction. The emails that the government made great fanfare of in the trial, you have to keep in mind he's working for DERCO. He's going into business for himself. He's also, in those emails, ordering radios. What does that have to do with anything? Well, Judge, he wouldn't want his employer to know he was moonlighting. Yeah, but the moonlighting is illegal activity. It's violating the embargo. Well, that ties into, really, whether we do have an agreement immediately. Did he make that explanation to the jury? Pardon me? Did he make that explanation to the jury? He didn't testify, Judge. Well, was that explanation an offer to the jury? Judge, I probably did. As memory serves me correctly, I probably, through cross-examination or otherwise, made those inferences. Okay, so the jury rejected the argument, as a matter of fact. Well, I think they didn't have the opportunity to really focus on what the law was, because they didn't get the right jury instructions. Because the jury didn't tell him, or because the judge didn't tell him? Pardon me? Never mind. You're almost there. Why don't you save the rest of your time? All right. So, Ms. O'Neill? Good morning. May it please the Court. My name is Erica O'Neill, and I represent the United States. I also represented the United States in the case below at trial. In the government's brief at pages 16 to the top of 17, I have included in total the defendant's proposed instructions, plural, as to willfulness. A review of those instructions reflects that they do not have any support in the underlying... But your instruction was terrible. It is terrible. I don't understand how the government could give such a bad instruction. Okay. Well, the instruction that was proffered was based on the Seventh Circuit's... that he knew he was sending stuff to Venezuela. In the jury instruction context, the government attempts to use a jury instruction that can be used from case to case. Was this instruction... I don't understand the government's giving this instruction. This question... I mean, this question raises almost all criminal cases, the knowledge of the defendant. All you have to do is specify what does the jury have to find that the defendant knew. Your Honor... Is the instruction taken from the pattern criminal jury instruction approved by this court? No, Your Honor. There is no pattern instruction as to willfulness. On this subject. So you had to make up your own. That is correct. And he had to make up his own. Correct. It's a question of which one you like. Correct. Or neither. And I think Judge Posner has taken that position. Perhaps. The district court, however, selected the government's proper instruction because it uses the standard language as to willfulness. But it leaves out the critical point. It leaves out the critical point about knowledge. Your Honor, the instruction indicates that it is the voluntary intentional violation of a known legal duty and that a defendant who is aware of a legal duty not to export defense articles on the munition list but who exports them anyway... No, that's very vague. Aware of a legal duty. He may know of a legal duty but not think that it's applicable to him. It would be so easy to draft a clear instruction. I don't understand this garbled legalism stuff. The government, in this case, attempted to pull the instruction from cases that had been decided previously, including... You see, look at your last sentence in the instruction. A defendant who is aware of a legal duty not to export defense articles on the munition list but who intentionally exported or attempted to export defense articles has acted willfully. Well, the defendant may be aware that there's a legal duty but that doesn't follow that he knew that the particular things he exported were on the list. That's why the government was required to prove that the items were on the munition list. But the instruction doesn't say this. It's not enough for it to be on the list. He has to know it's on the list. Why don't you just say he has to know that these devices he exported to Venezuela were on the list of defense articles that may not be exported? Say it in one sentence. Your Honor, I believe that whether or not the item was a munitions list item is a factual determination that must be left to the jury. Of course, that's what I'm saying. You tell the jury, did the defendant know that these canopy seals were on the forbidden list? You didn't ask that. Your Honor, well, I obviously see your point. Look at the last word, attempted to export defense articles. Well, but not all defense articles are embargoed. The issue in all defense articles at the time of the... But you don't say that. This is a really terrible instruction. Well, that may well be. However, the government feels obligated to propose instructions that have a basis in the law. Look, you're not understanding. This is very simple. The question is, did he know that the stuff he was sending to Venezuela was on this munitions list? That's what the jury has to determine. You just ask the jury to determine, did he know it was on the munitions list? And you wander around it in this instruction. Your Honor, this is the instruction as to willfulness. Then it is also necessary to look at the substantive instruction underlying counts two and three, which is that the defendant... Hopelessly complicating a simple point. May I improve myself? As I understand it, the government's position is that the jury was properly instructed considering all the jury instructions together. And that is as close as you can come. That is correct. That's your position? That is correct, Your Honor, based on the combination of the substantive instructions and then the willfulness instruction, which is based on previous Seventh Circuit case law as well as a Ninth Circuit case. Okay, that's your position? That is the government's position. I thought your real position was that it was a harmless error. When it comes to the issue of the sufficiency of the evidence, absolutely. The government's view... But you're not conceding it's an error, the instruction was an error, are you? No, Your Honor, we are not. But you are arguing that if it was an error, it was harmless. That is correct, Your Honor. How far can you go in excusing erroneous instructions on the ground that they're harmless? What if the judge didn't give any instructions? It depends on the issue. You'd be arguing that, well, it's true, he forgot to give instructions. But it doesn't matter because no reasonable jury could have acquitted this defendant given the overwhelming evidence of guilt. Would you argue that? No, because the government would not permit a jury to go back and deliberate without any instructions whatsoever. There was a time over all the years I played games with the pattern criminal jury instructions, state and federal. But I concluded, well, we really ought to tell the jury the defendant's been charged with sending illegal stuff overseas. You've heard all the evidence. Tell us whether he's guilty or not guilty. Oh, you started with the predicate that he's presumed innocent and the government is a burden of proof. After that, quit. All we do is confuse him anyway. Actually, most instructions are yours. You tell her to let the jury, the Court of Appeals know that the trial judge knew what the law was even if nobody else did. Anyhow. You didn't answer my question. I apologize, Your Honor. If the judge gave no instructions at all, fell asleep or something, but no reasonable jury could have acquitted the defendant because the evidence was so overwhelming, would you still argue harmless error and failure to give the instructions? Was the instruction tendered is the next question you should ask. Well, that is exactly the issue. I am thinking of perhaps a gun case where a felon in possession agrees to two of the three elements, that being the interstate commerce and the previous felony, and then say in a post-arrest statement admits that he did possess the gun in question. Perhaps in that limited circumstance, there might be. Okay. We'll take the next step. Suppose the evidence was overwhelming, and could the judge just dispense with the trial? No. Pardon? No, Your Honor. No? Why not? Because that is a... Why wouldn't that be a harmless error? No trial, but it was harmless because we know how the trial would have come out. No. I cannot imagine an instance where any government attorney would be standing up here saying that... It's the Constitution. It's not permitted. Exactly. Okay. Well, thank you very much, Ms. O'Neill. So, Mr. Hunt, you have a minute or so. Do you have anything for us? Your Honor, practically every case cited by the government, every case cited in my brief, really references how this type of law violation, the ACEA, and its interrelationship with rules and regulations, mean one thing, if it means anything, that this is the case where you can't say, when you're prosecuting somebody for this law violation, that ignorance of the law is no excuse. Oh, come on. Look, I find your argument totally unpersuasive. He signed something which said he recognized that he was bound by this munitions list, right? He signed that. And these canopy seals are on the munitions list. Why isn't that the end of the case? Well, because... You sign something, you say, you know, I promise to comply with this. No, you don't comply. Because that notice didn't comport with the notice in Swarovski, which was specific. Same problem with the jury trial. This was perfectly specific. It said to him, by signing this, you're bound by this, to comply with these regulations involving the munitions that you can export. Right? Judge, it mentions other regulations as well. It couldn't be clearer. Judge, I... He's in the business, right? Judge, no, he's an employee of a business. He's in the business. He starts his own business. I don't think that that imputes knowledge. He's not an expert, Judge. That wasn't proved. Okay. Well, thank you very much, Mr. Hodge. Thank you, Your Honor. And you were appointed? Yes, I was. Okay. Well, we thank you for your efforts on behalf of the client. We thank Ms. O'Neill as well.